UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

vs.

ELSTON GRIMES, JR.,

                Defendant.
_____

DECISION AND ORDER

18-CR-6101-CJS
23-CV-6738 CJS

INTRODUCTION

Now before the Court is a motion (ECF No. 66) by Elston Grimes, Jr. ("Grimes"
or "Defendant") pursuant to 28 U.S.C. § 2255, seeking to vacate an already-completed
five-month prison sentence imposed for a violation of supervised release.  More
specifically, Grimes contends that his attorney provided ineffective assistance of
counsel in connection with his decision to plead guilty to the violation, which he
maintains "resulted in a disproportionately harsh five-month sentence and termination of
his supervised release term, despite his significant progress and commitment to
rehabilitation."[1] For the reasons discussed below, the application is denied as both moot
and meritless.

BACKGROUND

The reader is presumed to be familiar with the history of this action.  Briefly, the
following facts are taken from the "Procedural History" section of the Government's
response (ECF No. 75) to Grimes' motion, to which Grimes has not objected:

On March 4, 2019, Defendant-Petitioner Elston Grimes was sentenced to
37 months in prison to be followed by three years of supervised release

---

[1] Section 255 Motion at p. 1.

after pleading guilty to stealing firearms from the business of a Federal Firearms Licensee in violation of Title 18, United States Code, Sections 922(u) and 924(m). Grimes' term of supervised release began on March 23, 2021, and was marred by a series of violations. *See* Exhibit 1, the June 27, 2023 violation petition. First, on September 1, 2021, Grimes' conditions were modified to include placement for four months at the Volunteers of America Residential re-entry Center due to drug use.  Second, on August 31, 2022, Grimes' conditions were again modified to include a sanction of two months on location monitoring with a curfew due to his moving without notifying his probation officer, missing mental health appointments, and his lack of employment. Third, on November 8, 2022, Grimes' conditions were again modified to include an additional two months of location monitoring with a curfew due to his continued lack of employment and for loitering in an area his probation officer instructed him not to be[.]  Fourth, on June 16, 2023, Grimes' conditions were again modified, and he was required to enter and complete the Salvation Army Adult Rehabilitation Center's adult program due to his lack of full-time employment, for associating with individuals engaged in criminal activity, and his continued housing instability.

Less than two weeks after that last modification, the Court issued an arrest warrant based on a violation petition signed on June 27, 2023. That petition . . . alleged four violations: (1) that Grimes never reported to the Salvation Army Adult Rehabilitation Center on June 21, 2023 as directed; (2) that Grimes associated with someone engaged in criminal activity – based on the probation officers' June 14, 2023 visit to Grimes' home where a female, who Grimes identified as a prostitute who had been actively using drugs in Grimes' home for several days, was found on the couch along with plastic baggies containing white powdery residue on the table; (3) that on June 16, 2023, Grimes' tested positive for cocaine, fentanyl, and cannabinoids; and (4) that Grimes was working less than 30 hours a week, and was unable to provide any documented proof of recent employment to his probation officer. As a result, the probation department sought revocation of Grimes' term of supervised release.

Probation had no contact with Grimes between at least June 27, 2023 (the date the Court issued an arrest warrant) and October 6, 2023 (the date of Grimes' initial appearance after being arrested on the warrant). See ECF No. 61.

> At the October 6, 2023 initial appearance, Grimes pleaded not guilty [and] was ordered detained, and a further status conference was set for November 6, 2023. ECF No. 61.  During the November 6, 2023, appearance, the defense had requested an adjournment. But as detailed below, Grimes instead wanted to proceed and conclude the matter that day by taking the 5-month term of imprisonment with no supervised release to follow offer, and the Court did as Grimes' requested. After taking the plea, the Court sentenced Grimes to exactly what he was promised: 5 months of imprisonment with no supervised release to follow. *Id*. at 16-17; ECF No. 62. The written judgment was docketed on November 8, 2023. ECF No. 63.
> 
> ***
> 
> Grimes filed the instant petition under § 2255 on December 26, 2023. ECF Nos. 64, 65, 66. By Order dated January 4, 2024, the Court directed the government to respond to the § 2255 Petition, and by Order dated February 22, 2024, the Court extended the government's response deadline to March 5, 2024. ECF No. 72.
> 
> The official transcript of the November 6, 2023 plea proceeding was docketed on February 23, 2024. ECF No. 73.

Government's Response, ECF No. 75 at pp. 1-3.

The Court notes only the following additional facts.  At the appearance on November 6, 2023, during which Grimes pled guilty to the violation, defendant's attorney, Assistant Federal Public Defender Wedade Abdallah, and the prosecutor, Assistant U.S. Attorney Sean Eldridge, both initially indicated that they had only had preliminary discussions with each other concerning a possible resolution of the case, and that they did not anticipate resolving the matter that day.   In response to questioning by the Court, Probation indicated that the guideline range for the alleged violation was 5-to-11 months imprisonment, and that it would not recommend any further period of supervised release after that.  The Court observed that if Grimes were to plead guilty, it would be inclined to sentence him to the low end of the guideline range, five months imprisonment, with no supervised release to follow, and that in such event, Grimes would receive credit for the

3

month that he had already been in custody on the violation.   The Government indicated that it would agree to that arrangement.

Ms. Abdallah then requested a one-week adjournment to discuss the matter with Grimes, which the Court indicated it would grant.   However, contrary to Abdallah's request, Grimes insisted that the matter be resolved that day under the terms just discussed.[2]   The Court then proceeded with the plea colloquy, during which Grimes indicated under oath, *inter alia*, that he understood he did not have to plead guilty, that he understood he was entitled to a hearing if he wanted one, that he was satisfied with Ms. Abdallah's representation, and that he did not want any additional time to discuss the matter with Abdallah.   Indeed, in response to the Court's questioning at two different points during the plea colloquy, Grimes indicated that he did not want any more time to speak with Abdallah before pleading guilty. *See*, Transcript at p. 13 ("THE COURT: Do you need further time to discuss this with Ms. Abdallah?  THE DEFENDANT: No, sir."); *see also, id.* at p. 14 ("THE COURT: Now, do you need any additional time, again, to speak with Ms. Abdallah?  THE DEFENDANT:  No, sir.").

In sum, the record indicates that on November 6, 2023, Grimes insisted on proceeding and pleading guilty to the violation in exchange for a five-month prison sentence and no further supervision, despite Ms. Abdallah's request for additional time to discuss the matter with him.   Now, however, Grimes maintains that Abdallah provided ineffective assistance of counsel, insofar as the low-end-of-the-guidelines five-month sentence he received, as agreed, was purportedly "disproportionately harsh."  Essentially, Grimes now contends that he should have received a below-guidelines sentence of less

---

[2] Transcript of Appearance on November 6, 2023, at  pp. 10-11.

4

than five months, based on a number of mitigating factors that he claims Abdallah failed to bring to the Court's attention, due to her unfamiliarity with his case.

In this regard, Grimes first contends that Abdallah should have argued that he was entitled to a shorter sentence for the violation, since the Bureau of Prisons ("BOP") had previously failed to properly calculate his already-served prison sentence, prior to him being placed on supervised release.  More specifically, Grimes maintains that he had earned "approximately 405 days" of "First Step Act credits" from participating in prison programs, which BOP never applied to his sentence.  According to Grimes, "these credits, had [they] been properly applied  by [BOP], would have significantly reduced his supervised release term under 18 U.S.C. 3624(g)(1) through an early transfer[.]" According to Grimes, BOP negligently failed to apply such credits to him, and Abdallah's failure to point this out to the Court on November 6, 2023, "deprived the Court of wholistic view of Mr. Grimes' commitment to rehabilitation and his progress under the First Step Act."

Next, Grimes contends that Abdallah should have argued that he was entitled to a shorter sentence on the violation, since caselaw developments in the "*Bruen/Daniels*" cases after he was originally sentenced for the underlying crime "cast doubt on the validity of" 18 U.S.C. § 922(g)(3), which in turn cast doubt on a sentencing enhancement he received" at the original sentencing under Guideline § 2K2.1(b)(6)(B). *See*, Section 2255 Motion at p. 5 ("The *Bruen* and *Daniels* rulings offered potentially powerful argument to undermining the initial sentence enhancement.").  Grimes, who pled guilty to burglarizing a gun shop and stealing numerous firearms, is here referring to the fact that in calculating his sentence under the advisory sentencing guidelines, the Court imposed a four-level

increase of his offense level for possessing a firearm during the commission of another felony offense, burglary.  Essentially, Grimes contends, again, that his original prison sentence was improper, and that Abdallah should have raised that point in arguing for a shorter sentence on the violation of supervised release.

Further, Grimes indicates that Abdallah erred by failing to argue, concerning his failure to report to the Salvation Army Adult Rehabilitation Center as ordered, that his culpability for the violation was reduced, since he had "maintained ongoing contact with his probation officer (via text messages) and actively sought alternative placement with the necessary resources."

Additionally, Grimes asserts that Abdallah was ineffective because she only became involved with his case a few days before his plea, which, he contends, evinced "a lack of interest, time, and resources to adequately investigate the circumstances and prepare a compelling defense."  Finally, Grimes argues that Abdallah's alleged ineffectiveness denied him Due Process, since it "denied [him] the opportunity to present a complete defense."

The Government counters that Grimes' motion is both moot and meritless.  The petition is moot, the Government maintains, since Grimes, who challenges only his sentence, is not in custody within the meaning of 28 U.S.C. § 2255, as he was released from custody on March 4, 2024, with no supervised release to follow. *See*, Govt. Response, ECF No. 75, at p. 5 ("Here, Grimes' § 2255 petition challenges only his sentence, and for relief, seeks his release from custody.  Since he has been released and has no term of supervision to follow, the petition is moot and must be dismissed.").

Alternatively, the Government contends that Grimes' claim of ineffective

assistance of counsel lacks merit, since he cannot show that Abdallah's alleged errors rendered his plea to the violation unknowing and involuntary, or that but-for such errors he would not have pleaded guilty and would have proceeded to a hearing on the violation. As for Grimes' contention that his attorney failed to argue that he was not actually guilty of the violation to which he pled guilty (failure to report to the Salvation Army Adult Rehabilitation Center on June 21, 2023, as directed), the Government further points out that Abdallah did, in fact, try to make such an argument on Grimes' behalf, but that the Court rejected the argument since it was clear, from the timing of the events and Grimes' own statements, that the excuse he had offered was false.[3]

The Government further contends that Grimes' assertion that Abdallah failed to properly investigate his case is meritless, since he insisted on proceeding with the plea that day, despite Abdallah's request for an adjournment. Additionally, the Government argues that Grimes' claim that Abdallah should have been able to negotiate a shorter sentence based on his claimed "progress and commitment to rehabilitation" is disproven by his repeated violations of the terms of his supervised release.

Finally, the Government maintains that Grimes' argument that Abdallah was ineffective for failing to argue that he should have received a shorter sentence due both to the BOP's alleged failure to give his "First Step Act credits" and to the Court's alleged error in imposing an enhancement to his offense level at the initial sentencing, lacks merit, stating:

> Grimes' two other arguments regarding ineffective assistance are also without merit. First, Grimes' makes an undeveloped claim that his attorney was ineffective for not challenging his prior conviction and/or the underlying

---

[3] Grimes had claimed that he had been unable to report since his son was in the hospital, but he later admitted that his son had been released from the hospital long before he was required to report.

Guidelines calculation based on the Supreme Court's decision in *Bruen* or the Fifth Circuit's decision in *Daniels*. But counsel cannot be ineffective for not raising a claim that cannot be raised in this forum. It is well settled that "[a] supervised release revocation proceeding is not the proper forum for a collateral attack on the conviction or sentence that resulted in the term of supervised release." *United States v. Warren*, 335 F.3d 76, 77 (2d Cir. 2003). The validity of the underlying offense "may be challenged only on direct appeal or through a habeas corpus proceeding." Id. at 78. As such, his claim is without merit.

But beyond that, it's just plain wrong on the merits. Grimes argues, without explanation, that he could receive a four-level reduction because some unidentified enhancement was similar to the New York "proper cause" licensing standard at issue in *Bruen*.  But Grimes' case had nothing to do with New York firearms carry permits or licenses, so any argument about "proper cause" licensing schemes is irrelevant. Grimes' underlying offense involved him breaking into and burglarizing  a gun shop where he stole multiple firearms. For that crime, Grimes had a base offense level of 14 under USSG § 2K2.1(a)(6) for being a prohibited person, and he then received a two-level increase under § 2K2.1(b)(1)(A) because three to seven firearms were involved in the offense. He also received a two-level increase under § 2K2.1(b)(4) because firearms were stolen and received a four-level increase under § 2K2.1(b)(6)(B) for possessing the firearms in connection with another felony offense. With a three-level reduction for acceptance, he was at level 19 and with Criminal History Category III, the Guidelines range was 37 to 46 months. See PSR, ECF No. 28. Those calculations are correct, and *Bruen* has nothing to do with the enhancements in this case.

Even if *Bruen* somehow factored into the enhancements in the underlying case (which it doesn't), and even if Grimes could now raise a Guidelines challenge in this collateral attack on a subsequent VOSR sentence (which he can't), the fact remains that Grimes agreed to all of these enhancements in his plea agreement where he also gave up his right to challenge any sentence of 46 months or less in any subsequent appeal or collateral attack. *See* Plea Agreement, ECF No. 22 at ¶23 to 25. And because Grimes was sentenced to 37 months, he waived any challenges to the sentence imposed in the underlying case – which, again, cannot be challenged in this habeas proceeding regarding the VOSR sentence of 5 months.

Second, Grimes complains about alleged miscalculations by the BOP. But those are also not relevant here because Grimes' sole avenue for relief was to raise those claims in a separate forum. Specifically, if Grimes had a challenge to the BOP's computation of any earned time credits, that application must first be administratively exhausted through the BOP. If Grimes remained dissatisfied with the BOP's determination, he could then bring a § 2241 challenge in the district of confinement.

It is well settled that after a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence. See 18 U.S.C. ' 3621(a)("A person who has been sentenced to a term of imprisonment ... shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed"). And in *United States v. Wilson*, 503 U.S. 329, 334-35 (1992), the Supreme Court concluded that district courts do not have the authority to compute time credits, but rather, the Attorney General (through the BOP) makes that determination as an administrative matter when imprisoning the defendant.

As mentioned, if an inmate is dissatisfied with the BOP's computation of time credits, federal regulations afford administrative review of that computation, *see* 28 C.F.R. §5 42.10-542.16 (1990), and only after exhausting the administrative remedies available can a defendant seek judicial review of the computations. *See Cleveland v. United States*, No. 12-CR-6109-FPG, 2018 WL 1640582, at *5 (W.D.N.Y. Apr. 5, 2018); *Dutton v. U.S. Attorney General*, 713 F. Supp. 2d 194, 206 (W.D.N.Y. 2010); *United States v. Louis*, 67 F. App'x 643 (2d Cir. 2003).   Judge Geraci recently summarized the well-settled principles in this regard that:

> Generally, "[a] district court may not [ ] modify a term of imprisonment once it has been imposed." *United States v. Burden*, No. 3:00-CR-263, 2010 WL 908929, at *1 (D. Conn. Mar. 8, 2010). Moreover, the BOP, not the sentencing court, is vested with the authority to calculate a defendant's sentence. *See United States v. Pineyro*, 112 F.3d 43, 45 (2d Cir. 1997). Thus, this Court is without power to modify Defendant's sentence on the basis that the BOP has miscalculated Defendant's release date.

> This is not to say that Defendant has no avenues for relief. If he wishes to challenge the BOP's calculation of his sentence, he may bring a petition under 28 U.S.C. § 2241. *See Darden v. Bureau of*

> *Prisons*, 707 F. Supp. 2d 363, 366 (E.D.N.Y. 2010) ("It is well-settled in this Circuit that a petition filed pursuant to 28 U.S.C. § 2241 ... [is] generally the appropriate vehicle to raise claims arising from ... a prison official's computation of a prisoner's sentence."). Before bringing a petition, however, Defendant must first seek administrative review of the calculation of his sentence, *see United States v. Senior*, 93 F. App'x 265, 266 (2d Cir. 2004) (summary order), and even then, Defendant must file the petition in the judicial district where he is confined, not the district where he was sentenced. *See United States v. Harriman*, No. 04-CR-162, 2010 WL 3702533, at *1 (D. Vt. Sept. 16, 2010).

United States v. Edwards, No. 14-CR-6173-FPG-4, 2020 WL 3050401, at *1 (W.D.N.Y. June 8, 2020).

> Grimes' claims about BOP's calculations (aside from being unsupported and factually undeveloped, which alone is fatal to his claim since he has the burden of establishing his claim and entitlement to relief) are not properly presented here. If Grimes wanted relief regarding time credit calculations, he needed to first exhaust his administrative remedies with the BOP, and if that was unsuccessful, any potential § 2241 petition could not be filed with this Court, but would have to be filed in the district where he is confined – not the district where he was sentenced. In indeed, Grimes did not serve his sentence in this district, so this Court never had jurisdiction to entertain (if it had been exhausted and then presented in a § 2241 petition) any claim based upon the computation of credits,[1] and his claim that counsel was somehow ineffective for not raising this claim (which would be barred in this forum, and for which Grimes has not alleged sufficient facts in any event) is without merit.

Govt. Response, ECF No. 75 at pp. 14-18.

Grimes subsequently filed a reply, ECF No. 76, in which he argues, first, that his motion is not moot even though his sentence is completed, since "the lasting consequences of a wrongful conviction survive beyond physical incarceration." Next, Grimes contends that he was not really guilty of the violation to which he pled guilty, purportedly since his probation officer was "aware[ ] of Grimes' efforts to comply with

supervised release conditions."    Additionally, Grimes reiterates his arguments that Abdallah was ineffective for failing to argue that BOP had miscalculated his original sentence.    Finally, Grimes seems to accuse the Government of a *Brady* violation for "failing to build a record."    On this point, Grimes implies that in connection with his plea to the violation, the Government should have developed the record concerning BOP's alleged failure to properly calculate his sentence.

The Court has now considered the parties' submissions and the entire record.

ANALYSIS

Defendant's *Pro Se* Status

Since Grimes is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Section 2255 Principles

Grimes' motion is brought pursuant to 28 U.S.C. § 2255, which provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).    "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7

11

L.Ed.2d 417 (1962)).

<u>An Evidentiary Hearing is Not Required</u>

The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).  Here, the Court finds that a full evidentiary hearing is not required because there are no material factual disputes and the record conclusively shows that Grimes is not entitled to relief.

<u>Mootness</u>

As a preliminary matter, the Government maintains that the Court should dismiss Grimes' motion as moot, since it challenges only his sentence on the violation of supervised release, which he has already served.   The legal principles that apply in this context are as follows:

> "[A] case is moot when the issues presented are no longer 'live' or the part[y] lack[s] a legally cognizable interest in the outcome." *See United States v. Suleiman*, 208 F.3d 32, 36 (2d Cir. 2000). For a party to have a cognizable interest in the outcome of a proceeding, a litigant must have suffered an actual injury traceable to the opposing party, and the alleged injury must be likely to be redressed by a favorable judicial decision. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).
>
> <u>While it is true that a criminal case does not "necessarily become moot when [an] [inmate] finishes serving the sentence," it will only remain a live case or controversy if there exists "some concrete and continuing injury or collateral consequence resulting from the conviction."</u> *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998)). Where an inmate challenges his criminal conviction, the Supreme Court "has been willing to presume the existence of collateral consequences sufficient to satisfy the case or controversy requirement," or has at least been willing "to count collateral consequences that are remote and unlikely to occur." *See id.* (emphasis omitted) (quoting *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999)). <u>However, challenges to</u>

<u>sentences do not create a presumption of collateral consequences. *See id.* at 293–94. And a challenge to the length of a completed sentence does not present a live controversy solely by virtue of its collateral effect or consequence on future sentencing.</u> *See Suleiman*, 208 F.3d at 36–37 (discussing Second Circuit precedents following *Spencer*, 523 U.S. at 7, 118 S.Ct. 978, and noting that the contrary holding in *United States v. Rivera*, 164 F.3d 130, 132 (2d Cir. 1999), was no longer good law). For example, "speculation that an individual will receive an enhanced sentence in a future sentencing proceeding in connection with a crime he has not yet committed" is insufficient to demonstrate the presumption of collateral consequences. *Mercurris*, 192 F.3d at 294. <u>Where courts decline to presume the existence of collateral consequences, the inmate seeking to challenge an already-completed sentence "bears the burden of demonstrating some 'concrete and continuing injury' sufficient to create an Article III case or controversy."</u> *Id.* (quoting *Spencer*, 523 U.S. at 7, 118 S.Ct. 978).

*United States v. Martin*, 974 F.3d 124, 140–41 (2d Cir. 2020) (underlined emphasis added).

In the instant case, Grimes challenges only the 5-month sentence he received for his violation of supervised release, and not his underlying conviction. However, while Grimes opposes the Government's argument concerning mootness, he has not asked the Court to presume the existence of collateral consequences relating to his completed sentence, and the Court would decline to do so in any event. *See, e.g., U.S. v. Mercurris*, 192 F.3d 290, 293-294 (2d Cir. 1999) (Observing that the defendant's argument that the court should presume collateral consequences from a completed sentence was "foreclosed" by the Supreme Court's decision in *Spencer v. Kemna*). Nor has Grimes attempted to meet his burden of showing an actual concrete and continuing injury flowing from that sentence. Consequently, Grimes' motion is dismissed as moot.

<u>Ineffective Assistance of Counsel</u>

Alternatively, even if Grimes' motion was not moot, it lacks merit. In that regard,

some of Grimes' arguments, such as his belated arguments that the Government committed a *Brady* violation or that he was actually innocent of violating supervised release by failing to report to the failure to report to the Salvation Army Adult Rehabilitation Center on June 21, 2023, as ordered, are so plainly meritless that they do not warrant further discussion.

Grimes' primary argument, that he was denied his Sixth Amendment right to effective assistance of counsel in connection with his plea to the violation, is also meritless. The legal standards applicable to such claims are well-settled:

> To succeed on a claim of ineffective assistance, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness" and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Rodriguez v. United States*, 767 F. App'x 160, 163 (2d Cir. 2019); *see also*, *Marston v. United States*, No. 17-CR-298 (JGK), 2020 WL 6701014, at *3 (S.D.N.Y. Nov. 13, 2020) ("[A] petitioner must show both that (1) his counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and that (2) counsel's deficient performance was prejudicial to the petitioner's case.").

> Under the first prong of the *Strickland test*, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. There is a "strong presumption" that defense counsel's conduct falls within the broad spectrum of reasonable professional assistance, and a petitioner "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

> In order for a defendant to prove prejudice under the second prong of the *Strickland* test, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.... The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94.

*Marston v. United States*, 2020 WL 6701014, at *3.

As indicated above, the analysis under the first *Strickland* prong is deferential to

counsel, such that

> "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *Mason v. Scully*, 16 F.3d 38, 42 (2d Cir.1994) (citation and internal quotation marks omitted). Moreover, when reviewing decisions by counsel, [courts] are instructed not to "second-guess reasonable professional judgments and impose on ... counsel a duty to raise every 'colorable' claim." *Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

*Acevedo v. Capra*, 600 F. App'x 801, 803 (2d Cir. 2015); *see also, Carmichael v. Chappius*, 811 F. App'x 41, 43 (2d Cir. 2020) ("A court must make allowances for counsel's strategic choices and apply 'a heavy measure of deference to counsel's judgments.'" [*Strickland*, 466 U.S.] at 691, 104 S.Ct. 2052.").

Moreover, the showing under the second *Strickland* prong must be substantial,

taking into consideration the strength of the prosecution's case:

> To establish *Strickland* prejudice, [the defendant] must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. That is, [the defendant] must show that he was "deprive[d] ... of a fair trial, a trial whose result is reliable." *Id*. at 687, 104 S.Ct. 2052; *see also [Harrington v.] Richter*, 562 U.S. [86,] 111, 131 S.Ct. 770 [(2011)] ("*Strickland* asks whether it is 'reasonably likely' the result would have been different." (quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052) ). "[T]he question is not whether a court

can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently"; instead, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12, 131 S.Ct. 770 (emphasis added); *see also Strickland*, 466 U.S. at 693, 104 S.Ct. 2052 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." (internal citation omitted)).

The prejudice analysis should also "be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill v. Lockhart*, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052). The prejudice inquiry is therefore ineluctably tied to the strength of the prosecution's evidence. "[A] verdict or conclusion with ample record support is less likely to have been affected by the errors of counsel than 'a verdict or conclusion only weakly supported by the record.'" *Waiters [v. Lee]*, 857 F.3d [466,] 480 [(2d Cir. 2017)] (quoting *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052). As a result, "[e]ven serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001).

*Garner v. Lee*, 908 F.3d 845, 861–62 (2d Cir. 2018).

Since a defendant is required to establish both *Strickland* prongs to prevail, a court is not required to consider both prongs where it is evident that the defendant cannot meet a particular prong:

A court has flexibility in how it decides a claim of ineffective assistance. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." [*Strickland*, 466 U.S.] at 697, 104 S.Ct. 2052. Consequently, if a defendant does not successfully establish either the performance prong or the prejudice prong, the ineffective assistance claim fails, and the remaining prong becomes moot. *See id*.

*Carmichael v. Chappius*, 811 F. App'x at 43–44.

16

In the instant case, Grimes has not made a sufficient showing on either of the *Strickland* prongs.  First, Grimes has not shown that Abdallah committed unprofessional errors by not making the various arguments in favor of a shorter sentence that he now raises.  Even assuming *arguendo* that the arguments had merit, it is clear that Grimes prevented Abdallah from raising them when he insisted on pleading guilty on November 6, 2023, rather than taking an adjournment to discuss the matter with Abdallah, as Abdallah had requested.  Notably, in that regard, Grimes does not claim that, before insisting on pleading guilty, he ever told Abdallah (who he maintains was unfamiliar with his case) about the various issues, relating to his original sentencing and computation of his prison sentence by BOP, that he now maintains should have resulted in a shorter sentence.[4]  Having rejected Abdallah's advice to take an adjournment and instead having insisted on pleading guilty immediately that day in exchange for a five-month sentence, Grimes should not be heard to complain now about the fact that Abdallah did not investigate further or negotiate a shorter sentence for him. *See, e.g., Arocena v. United States*, 721 F. Supp. 528, 533–34 (S.D.N.Y. 1989) ("Arocena's testimony at trial was the result of his own tactical decision to take the stand in his defense. Arocena's counsel specifically advised him not to testify, but this advice was rejected.  Petitioner cannot now invoke the effects of that testimony as a ground for arguing that his counsel provided ineffective assistance[.]"), *aff'd*, 902 F.2d 1556 (2d Cir. 1990); *see also, Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1996) ("Langford's present contention that MacKay should

---

[4] *See, Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1996) ("Langford knew the facts; he did not convey them to [his attorney,] MacKay[,] even though they discussed Langford's arrest and confession. At least in the face of Langford's determination to plead guilty, MacKay was not bound to investigate the matter further.").

have pursued this alternative route to suppression of his confession must be viewed in the context of Langford's insistence, at the time, that he wanted no motions to suppress or other types of delay to interfere with his intended plea of guilty. We conclude that MacKay's performance with regard to this issue did not fall below the requisite level of competence."); *Harris v. Wallace*, No. 4:16CV417 RLW, 2021 WL 5177355, at *4 (E.D. Mo. Nov. 8, 2021) ("[T]he Court holds that Harris's Plea Counsel was not ineffective, given the circumstances of Harris's plea. Harris insisted on pleading guilty without notice to his counsel, giving his Plea Counsel no opportunity to research potential sentencing issues. . . . Thus, Plea Counsel cannot be found to be ineffective when Harris's own actions—his insistence on pleading guilty without prior notice—prevented Plea Counsel from researching and determining the ramifications of his actions.").

Besides that, it is clear, as the Government maintains, that some, if not all, of the arguments Grimes claims Abdallah should have raised lack merit in any event.[5]   For example, the Court agrees with the Government that Grimes' argument concerning the calculation of his original sentence under the advisory sentencing guidelines is "just plain wrong." *See*, Govt's Response, ECF No. 75 at p. 15 ("Grimes argues, without explanation, that he could receive a four-level reduction because some unidentified enhancement was similar to the New York 'proper cause' licensing standard at issue in *Bruen*.  But Grimes' case had nothing to do with New York firearms carry permits or licenses, so any argument about 'proper cause' licensing schemes is irrelevant.  Grimes' underlying offense involved

---

[5] Regarding Grimes' arguments concerning sentencing enhancements and "First Step Act credits," the Court, unlike the Government, does not interpret Grimes' papers as attempting to collaterally attack either the sentence that this Court imposed originally or the computation of his sentence by the BOP.  Rather, the Court understands Grimes to argue that errors were made that affected the length of his original prison sentence, which, as a matter of fairness, should have resulted in the Court imposing a shorter sentence when it sentenced him for the violation of supervised release, and that Abdallah was ineffective for not making that argument to the Court.

him breaking into and burglarizing a gun shop where he stole multiple firearms.").

On this point, Grimes argues that he should not have received a four-level increase under USSG § 2K2.1(b)(6)(B), for possessing the stolen firearms in connection with another felony offense, purportedly since "the Supreme Courts *Bruen* decision and the Fifth Circuit's *Daniels* ruling cast doubt on the validity of [18 U.S.C.] § 922(g)(3)." Pl. Section 2255 Motion at p. 2. The Court believes, however, that Grimes may be confusing the 4-level enhancement he received under USSG § 2K2.1(b)(6)(B) with the calculation of his base offense level under USSG § 2K2.1(a)(6), which considered the fact that he was a "prohibited person."[6] *See*, Section 2255 Motion at p. 5 ("[T]he Fifth Circuit's *Daniels* decision declared section 922(g)(3) of the Gun Control Act unconstitutional as applied to sober citizens with past drug offenses. This section often forms the basis for firearm enhancements because it utilizes the definition of a prohibited person under 922(g).").

In any event, the Second Circuit has not similarly declared § 922(g)(3) to be unconstitutional. *See, e.g., United States v. Morales*, No. 24 CR. 84 (PAE), 2024 WL 3345982, at *1 (S.D.N.Y. July 8, 2024) (Observing that the Second Circuit "has upheld, in a non-precedential summary order, another subsection of the statute, § 922(g)(3), which prohibits unlawful users of controlled substances from possessing firearms or ammunition, stating that 'the contention that [Section] 922(g)(3) is unconstitutional [post-*Bruen*] is not clear under current law.' *United States v. Brillon*, No. 22 CR. 2956, 2024 WL 392949, at *1 (2d Cir. Feb. 2, 2024) (quoting *United States v. Stephenson*, No. 21 CR. 74, 2023 WL 3402310, at *1 (2d Cir. May 12, 2023)).").

---

[6] The Presentence Investigation Report indicated that Grimes' base offense level was 14, since he was a "prohibited person" inasmuch as he was "admittedly an unlawful drug user and addicted to both marijuana and molly at the time of the commission of the instant offense." *Id*. at p. 7.

Consequently, even assuming *arguendo* that Abdallah was aware, on November 6, 2023, of the issues that Grimes now claims he wanted her to raise,[7] her failure to raise them does not amount to an unprofessional error sufficient to satisfy the first *Strickland* prong, since an attorney is not ineffective for failing to raise meritless arguments. *See, e.g., Aparicio v. Artuz*, 269 F.3d 78, 100 (2d Cir. 2001) ("Petitioner's appellate counsel was not ineffective for failing to raise the meritless argument."); *see also, Paulino v. Miller*, No. 20CV5067MKVBCM, 2023 WL 6379776, at *13 (S.D.N.Y. Sept. 13, 2023) ("As to the first *Strickland* prong – deficient performance – it is well settled that trial counsel cannot be ineffective in failing to make a meritless argument.") (internal quotation marks omitted, collecting cases), report and recommendation adopted, No. 20-CV-5067 (MKV), 2023 WL 6387017 (S.D.N.Y. Sept. 29, 2023).

Finally, even assuming that Grimes had satisfied the first *Strickland* prong, his Section 2255 motion would still fail since he has not made the second *Strickland* showing of prejudice.  In that regard, prejudice typically is not found where, as here, a defendant ignores his attorney's advice and insists on pleading guilty. *See, e.g., Mena v. Long*, No. EDCV1300490CJCAFM, 2017 WL 1186386, at *12 (C.D. Cal. Jan. 24, 2017) ("Prejudice from counsel's performance during the plea stage generally does not exist when a defendant insists on pleading guilty.") (collecting cases), report and recommendation adopted, No. EDCV1300490CJCAFM, 2017 WL 1173905 (C.D. Cal. Mar. 29, 2017), *aff'd sub nom. Mena v. Ndoh*, 770 F. App'x 339 (9th Cir. 2019).

And, even without regard to that general rule, Grimes has not shown a reasonable

---

[7] Again, since Grimes contends that Abdallah was newly-assigned and unfamiliar with his case this would require one to assume that Grimes actually raised these points with Abdallah on November 6, 2023, of which he has made no showing.

probability that but for Abdallah's alleged errors the outcome of his plea would have been different, in that it would have resulted in in a shorter sentence. *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985) ("The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.").  In that regard, there is no reason to think that the Government would have ever agreed to a sentence of less than the low-end-of-the-guideline sentence of five months based on the points Grimes now raises, even assuming that Abdallah had raised them.  Rather, as already discussed, the Government insists that Grimes' arguments are patently meritless.  Nor would any of those same arguments have caused this Court to impose a lesser sentence, since the Court agrees with the Government that they are meritless and/or irrelevant to Grimes' violation of supervised release. *See, e.g., Hansberry v. United States*, No. 3:16-CV-00965 (SRU), 2018 WL 3862690, at *7 (D. Conn. Aug. 14, 2018) ("[T]here is not a reasonable probability that, but for counsel's error, the defendant would have received a different sentence, and Hansberry was not prejudiced by any error on the part of his attorney.") (citations and internal quotation marks omitted); *see also, Pak v. United States*, 278 F. Supp. 2d 263, 267 (D. Conn. 2003) ("Because this court would not have granted a continuance under such circumstances, Pak has suffered no prejudice as a result of trial counsel's decision not to request a continuance.").

In sum, Grimes has not shown that his attorney's conduct fell below prevailing professional norms or that he was prejudiced by her performance.  Accordingly, his Section 2255 motion would be denied on the merits even if it was not moot.

CONCLUSION

The application under 28 U.S.C. § 2255 (ECF No. 66) is denied.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Defendant has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to close civil action 23-CV-6738 CJS.

So Ordered.

Dated: Rochester, New York
October  30, 2024

ENTER:

CHARLES J. SIRAGUSA
United States District Judge

22